Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with minor modifications.
The record is hereby reopened to receive into evidence the Agreement of Final Settlement and Release and the Order approving the Agreement filed 18 July 1997.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. The parties are subject to the North Carolina Workers' Compensation Act.
3. Plaintiff was an employee of defendant-employer at all relevant times; she has not worked for defendant-employer since 16 February 1995.
4. Liberty Mutual Insurance Company was the workers' compensation carrier on the risk in May 1993. Casualty Reciprocal Exchange has been the workers' compensation carrier for defendant-employer since 1 June 1993.
 *********** EVIDENTIARY RULING
All objections made by the parties during the depositions were ruled upon in accordance with applicable law and the Deputy Commissioner's Opinion and Award, and no error has been assigned.
 ***********
The Full Commission finds as fact the following:
 FINDINGS OF FACT
1. Plaintiff, who has an eighth grade education, began working for defendant-employer on 9 January 1993 as the manager of a convenience store. Plaintiff usually worked twelve to thirteen hours per day, during which she was standing at least nine hours.
2. For many years before 1989 and since, plaintiff has had severe and extremely chronic venostasis changes in her leg. In 1989, plaintiff suffered a deep venous thrombosis which resulted in a pulmonary embolism and clotting in her legs.
3. On or about 15 May 1993, plaintiff sustained an admittedly compensable injury by accident when she scraped the interior aspect of her left ankle against a cardboard box. Subsequently, plaintiff developed an ulcer at the site of the injury. As a result, plaintiff missed one day from work and received treatment from Dr. Willard Thompson, an internist who is her primary care physician. The ulcer "healed," meaning that it developed a new epithelial lining covering the outside, but there were still venous problems underneath it, and the tissue was not "normal."
4. Although no form agreement was filed with the Industrial Commission, the defendant-carrier on the risk, Liberty Mutual Insurance Company, accepted the claim and paid medical compensation only. The last payment of medical compensation for this injury was 15 August 1993. No award was ever entered in that claim. Further, plaintiff did not file a Form 18 Notice of Accident to Employer until 3 March 1995.
5. On or about 5 February 1994, plaintiff sustained another admittedly compensable injury by accident when she bumped the interior aspect of her left ankle against a stool at work, which caused bleeding at the site of first injury. The area became infected and plaintiff was hospitalized at Rowan Memorial Hospital from 10 February 1994 through 14 February 1994 for treatment. As a result of the 5 February 1994 injury, plaintiff missed work from 10 February 1994 through 19 February 1994. The site again healed.
6. The defendant-carrier on the risk, Casualty Reciprocal Exchange Company, accepted liability and filed a Form 21 Agreement, which was approved by the Industrial Commission on 14 November 1994. Plaintiff was paid disability and medical compensation for the injury by accident.
7. On or about 23 April 1994, plaintiff sustained a third admittedly compensable injury by accident when she hit her left ankle, causing an raw area approximately two inches square at the same site as her previous injuries. As a result of this third injury by accident, plaintiff received additional treatment from Dr. Thompson and was out of work from 25 April 1994 through 2 May 1994 and from 9 May 1994 through 20 June 1994. The site again healed. Following 20 June 1994, plaintiff returned to work for defendant-employer at the same rate of pay she earned before 23 April 1994.
8. The defendant-carrier on the risk, Casualty Reciprocal Exchange Company, filed a Form 21 Agreement accepting liability for the 23 April 1994 injury by accident, which was approved by the Industrial Commission on 14 November 1994. Plaintiff was paid disability compensation and medical benefits.
9. Plaintiff's average weekly wage on 5 February 1994 and 23 April 1994 was $217.80.
10. On 16 February 1995, plaintiff was standing at the cash register at work when a co-worker noticed that plaintiff was bleeding from the site of the previous injuries on her left ankle. Plaintiff does not recall having bumped into anything. Plaintiff again sought treatment from Dr. Thompson. The same ulcer site involved in the three prior injuries had re-ulcerated, spontaneously rupturing and bleeding.
11. Plaintiff did not sustain an injury by accident arising out of or in the course of her employment with defendant-employer on 16 February 1995.
12. Dr. Thompson testified that due to plaintiff's pre-existing severe chronic venostasis problem with varicosities, even minor bumping could and did cause a difficult or non-healing ulceration that resulted in spontaneous bleeding. The veins just underneath the surface of the skin over the ulceration were dilated and placed under tremendous pressure when plaintiff stood all day. At very high venous pressure, plaintiff's veins would break and bleed. All three injuries by accident aggravated plaintiff's pre-existing condition and were significant factors in the development and continuing problems of the non-healing ulcer on the left ankle that spontaneously erupted in February 1995.
13. Dr. Douglas Adams reviewed plaintiff's medical records at the request of the defendant-carrier Casualty Reciprocal Exchange Company, although he never examined plaintiff. Based upon his review of the medical records, Dr. Adams opined that, assuming the ulcer developed after the first injury, the subsequent two injuries in 1994 did not substantially contribute to the condition plaintiff incurred in 1995. However, Dr. Adams further testified that he could not make a good estimate as to the cause of the 1995 condition because he did not examine plaintiff, and that Dr. Thompson was in a better position to evaluate plaintiff's condition. The Full Commission gives more weight to Dr. Thompson's causation opinions.
14. The non-healing ulcer on plaintiff's left ankle was a direct and natural result of all three compensable injuries by accident, each of which significantly contributed to the development and continuing problems of the non-healing ulcer which spontaneously erupted in February 1995. Any attempt to apportion causation among the three injuries or to apportion liability between the two carriers on the risk would be purely speculative.
15. The spontaneous bleed in 1995 was the direct and natural result of the admittedly compensable injury by accident which occurred on 23 April 1994. The 23 April 1994 injury significantly contributed to plaintiff's continuing problems with the non-healing ulcer.
16. After the spontaneous eruption of the non-healing ulcer on 16 February 1995, plaintiff was unable to perform her normal job duties with defendant-employer because she was required to stand for prolonged periods. She was, however, capable of working in a job that allowed her to sit with her legs elevated. Defendant-employer did not offer her work that was suitable to her capacity.
17. On 7 July 1995, Dr. Thompson completed an insurance form relating to plaintiff in which he stated that the ulcer had healed, but that the severe chronic venous stasis changes in both legs were permanent. Plaintiff reached maximum medical improvement on 7 July 1995.
18. Because defendant-employer did not offer plaintiff work that was suitable to her capacity, she was unable to work from 16 February 1995 until she reached maximum medical improvement on 7 July 1995.
19. At the time of the hearing, the ulcer had again healed and had the appearance of a bruise with thin skin covering visible vericose veins. Plaintiff continually experiences pain in the area.
20. Both plaintiff's pre-existing problems and the non-healing ulcer were significant factors contributing to her disability. As a result of these factors, plaintiff is not capable of working in a job that requires standing from eight to ten hours a day. She can perform a seated job if she can keep her left leg elevated most of the time. As a result of the non-healing ulcer, which is a direct and natural result of the three compensable injuries, plaintiff has not been capable of performing the job she held with defendant-employer since 16 February 1995.
21. Plaintiff made no effort to find alternative employment within her restrictions after she reached maximum medical improvement. The greater weight of the evidence does not show that it would be futile for plaintiff to seek other employment.
22. The evidence fails to show that, after 7 July 1995, plaintiff was unable to earn the same wages she earned before the spontaneous bleed.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The 18 July 1997 Order approving the compromise settlement agreement discharged defendant Liberty Mutual Insurance Company's liability to plaintiff.
2. The non-healing ulcer on plaintiff's left ankle was a direct and natural result of all three admittedly compensable injuries by accident, including the third injury by accident. The third injury by accident significantly contributed to the development and continuing problems of the non-healing ulcer which spontaneously erupted in February 1995. Defendant-employer and defendant Casualty Reciprocal Exchange are liable for the disability that arose following the February 1995 spontaneous bleed.
3. As a result of her continuing problems with the non-healing ulcer, plaintiff was temporarily and totally disabled from 16 February 1995 until 7 July 1995 and is entitled to compensation at the rate of $145.20 per week for that period. G.S. § 97-29.
4. The greater weight of the evidence fails to show that, after she reached maximum medical improvement, plaintiff was unable to earn the same wages she earned before her third injury by accident. Therefore, plaintiff is not entitled to total disability payments after that date. G.S. § 97-29.
5. Plaintiff is entitled to medical compensation resulting from her compensable injuries as may reasonably be required to effect a cure, give relief, or lessen plaintiff's disability. G.S. § 97-25, § 97-25.1.
6. The issue of whether plaintiff retained any permanent partial disability once she reached maximum medical improvement is left open for further hearing. G.S. § 97-31.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant-employer and defendant Casualty Reciprocal Exchange shall pay plaintiff compensation at the rate of $145.20 per week for the period from 16 February 1995 until 7 July 1995 for temporary total disability.
2. A reasonable attorney's fee in the amount of twenty-five percent of the compensation payable is approved for plaintiff's attorney
3. Defendant-employer and defendant Casualty Reciprocal Exchange shall pay all additional medical compensation due as a result of the injuries by accident when bills have been submitted to the Industrial Commission and approved by the Commission.
5. Defendant-employer and defendant Casualty Reciprocal Exchange shall pay the costs.
 S/ _____________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ _____________ BERNADINE S. BALLANCE COMMISSIONER
S/ _____________ LAURA KRANIFELD MAVRETIC COMMISSIONER
RCR:db